**UNITED STATES  DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

ALONZO GONZALES                                              CIVIL ACTION

VERSUS                                                       NO.  14-2448

BURL CAIN, WARDEN                                            SECTION "A"(5)

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2).  For the following reasons, **IT IS RECOMMENDED** that the petition for *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

### I. *Procedural and Factual History*

Petitioner, Alonzo Gonzales, and a co-defendant, Gregory Red, were charged and jointly tried for armed robbery.[1]  Following a jury trial, Gonzales was convicted.  Red was found not guilty.[2]  The Louisiana Fourth Circuit on direct appeal summarized the relevant facts

---

[1] State Rec., Vol. 1 of 7, Bill of Information. A third individual, Mohammed Diokhane, was also charged in the same bill of information. He later pleaded guilty and testified at the trial of Gonzales and Red.

[2] *Id*., Verdict of the Jury filed August 27, 2009.

determined at trial as follows:

Priscilla Magee, the victim, testified at trial. On August 21, 2005, she was the second assistant manager of the McDonald's restaurant on Voters Road in Slidell. During her 11:00 a.m. to 8:00 p.m. shift that day, the restaurant sold approximately $3,000.00 of food. Managers at the restaurant used a purse, a bag, or a McDonald's bag to take deposits to the bank. After the end of her shift, she left the restaurant, carrying a purse, containing $6.00 or $7.00, and a McDonald's bag containing a quarter-pounder cheese burger, spicy chicken nuggets, and a salad.

As the victim was unlocking the door of her vehicle, she was approached by a young man. He was wearing a white Dickies shirt, a white tie, and black pants. He pulled the McDonald's bag away from the victim, stating, "Give it up, give it here[,]" and pointed a handgun at her face. The robber had a black T-shirt covering his hair and part of his face, but the victim could see his eyes and nose. She considered the robber to have a pointed nose. The victim fell to the ground and began screaming for help. She was "[v]ery afraid[,]" and "very traumatized." The robber ran into a nearby wooded area, taking the McDonald's bag with him. The robbery occurred in an area with good lighting, and the victim got a "good look" at the exposed portion of the robber's face. She identified the defendant as the robber on the night of the robbery. She considered him to be the "brighter" skinned of the two suspects shown to her. She also identified the defendant in court as the robber, and stated she considered his nose to be pointed. She was certain he was the robber.

St. Tammany Parish Sheriff's Office Deputy Michael McCrea also testified at trial. Following the robbery, he established a perimeter around the McDonald's restaurant on Voters Road. He apprehended the defendant and Mohammed Diokhane emerging from behind a house thirty or forty minutes after the robbery. They were out of breath, sweating, and wet from their knees down.

Slidell Police Officer, First Class, Rodney West, Jr., also testified at trial. On August 21, 2005, at approximately 9:30 p.m., he responded to the scene of the robbery. The victim indicated the robber had been wearing all black, but she saw the collar of a white shirt under his black top. Approximately thirty minutes later, he transported the victim to view two suspects in the crime. The suspects had mud on their shoes, and the bottoms of their pants were wet. The victim identified the defendant as the robber. He was dressed in clothing consistent

2

with her earlier description. Additionally, Officer West located a Chrysler New Yorker automobile, with a ripped-off license plate, parked near the levee, approximately one mile from the crime scene. The hood was warm, indicating that the vehicle had been driven recently. The license plate was inside the vehicle, lying face down on the floorboard, partially covered by a cloth.

The vehicle belonged to Daryl Ross. Ross indicated he had loaned the vehicle to the defendant. Additionally, fingerprints recovered from the vehicle matched the fingerprints of the defendant. Two pairs of jeans that belonged to Ross, and which Ross indicated had been in the vehicle when he loaned it to the defendant, were subsequently recovered in a bag with a handgun on the levee.

Trina Mohammed also testified at trial. At the time of the offense, she was the assistant manager of the McDonald's restaurant on Voters Road. She indicated, on that day, she volunteered to make the deposit for the restaurant after the victim announced that she was "going to do [the] deposit." After the victim's announcement, Gregory Red, an employee of the restaurant, asked to use the telephone. Trina Mohammed indicated that prior to the robbery, she saw the Chrysler drive around the parking lot at least twice and then park next to the victim's vehicle.

Mohammed Diokhane also testified at trial. He indicated he knew the defendant, but claimed the defendant was not involved in the robbery. He claimed he was with the defendant on the night of the robbery, smoking marijuana on the levee. He claimed he left the defendant on the levee and robbed the victim. He claimed he was wearing a gray shirt and a black shirt and gray pants. He denied that he expected money to be in the bag. When asked why he did not take the victim's purse, he replied, "I don't have an answer for that, sir." He also claimed he could not remember what he said to the victim during the robbery. He claimed he removed the license plate from the Chrysler so that it could not be identified. He conceded that both he and the defendant drove the Chrysler on the day of the robbery. Additionally, Diokhane indicated the defendant picked him up in the car. Diokhane also conceded he and the defendant were together when they were arrested for the robbery. Phone records indicated that at 7:40 p.m. on the night of the robbery, Gregory Red tried to call Diokhane, and at 7:50 p.m., Red received an incoming call from Diokhane's cell phone. Diokhane claimed he did not call Red or speak to him on the day of the robbery. He conceded the defendant used Diokhane's cell phone on the night of the robbery. He also denied Red had anything to do with the robbery.

3

Gregory Tashon Red also testified at trial. He indicated in August of 2005, he was sixteen years old and working at the McDonald's restaurant on Voters Road. He claimed he was working inside the restaurant when the victim was robbed. He indicated he knew the defendant "from school." He conceded he spoke to the defendant on the day of the robbery, but claimed they only discussed their hair and girls. Red denied any involvement in the robbery.[3]

On March 1, 2010, the trial court sentenced Gonzales to 40 years imprisonment without benefit of probation, parole or suspension of sentence.[4]

On March 25, 2011, Gonzales' conviction and sentence were affirmed on appeal. The court of appeal rejected his three asserted claims of insufficient evidence, improper denial of his motion to reconsider sentence and excessive sentence.[5] The Louisiana Supreme Court denied relief on October 21, 2011.[6] He did not seek review to the United States Supreme Court. His conviction and sentence became final ninety (90) days later, on January 19, 2012.[7]

On January 18, 2013, Gonzales filed a counseled application for post-conviction relief

---

[3] State Rec., Vol. 5 of 7, *State v. Gonzales*, 2010-KA-1634, 2011 WL 1103653, at *1-2 (La. App. 1st Cir. March 25, 2011)  (unpublished).

[4] State Rec., Vol. 1 of 7, Minute Entry, March 1, 2010 (sentencing).

[5] State Rec., Vol. 5 of 7, *State v. Gonzales*, *supra*.

[6] *State v. Gonzales*, 2011-KO-0854 (La. 10/21/11), 73 So.3d 379.

[7] *See Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir.1999) (holding that the period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S.Ct. Rule 13.1.

and a motion to supplement the application with the state district court.[8]  On February 4, 2013,

the district court ordered him to file an amended application and memorandum in support.

On April 12, 2013, Gonzalez filed an amended application for post-conviction relief asserting

two grounds for relief: (1) the trial court exceeded its jurisdiction given his juvenile status and

noncompliance with Louisiana Children's Code article 305; and (2) four instances of ineffective

assistance of trial counsel, namely failure to object to the improper transfer of jurisdiction to

the criminal district court; extreme brevity in voir dire; failure to adequately cross-examine

the victim regarding inconsistencies in her identification of petitioner; and failure to object or

request a mistrial after the victim's suggestive in-court identification.[9]  On May 20, 2013, the

trial court denied relief.[10]   On or about June 14, 2013, counsel sought and was granted an

extension of the return date until July 19, 2013 to file an application for supervisory writs in

the court of appeal.  He filed the application with the Louisiana First Circuit on July 19, 2013.[11]

---

[8] State Rec., Vol. 5 of 7, Uniform Application for Post-Conviction Relief filed January 18, 2013 and motion for leave to supplement application.  In his motion for leave to supplement, counsel notes that he filed the application in order to toll the federal one-year limitations period, which would expire one year from the date of finality of the conviction.

[9] State Rec., Vol. 5 of 7, Uniform Application for Post-Conviction Relief.

[10] *Id.*, State district court Judgment denying PCR issued May 20, 2013.

[11] State Rec., Vol. 6 of 7, Petition for Writ of Certiorari to Review Decision of the Honorable Scott Gardner, 2013-KP-1259, stamped as received by the clerk of the court of appeal on July 19, 2013.

On November 1, 2013, the Louisiana First Circuit denied relief without stated reasons.[12] On November 25, 2013, counsel for Gonzales filed a petition for review with the Louisiana Supreme Court.  That application was denied without comment on October 10, 2014.[13]

On October 22, 2014, Gonzales filed the instant federal application seeking *habeas corpus* relief.[14]  In his application, Gonzales raises five claims for relief:  (1) the evidence is insufficient to support the conviction; (2) the trial court erred in denying the motion to reconsider the sentence; (3) the sentence imposed is constitutionally excessive; (4) the court exceeded its jurisdiction; and (5) ineffective assistance of trial counsel.

The State concedes that the claims were properly exhausted in the state courts. However, the State contends the petition should be dismissed as untimely. In the alternative, the State argues that the claims should be denied as meritless.

---

[12] *State v. Gonzales*, 2013-KW-1259 (La. App. 1st Cir. Nov. 1, 2013) (unpublished writ decision), State Rec., Vol. 5 of 7.

[13] *State v. Gonzales*, 2013-KP-2730 (La. 10/10/14), 150 So.3d 892; State Rec., Vol. 6 of 7.

[14] "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court." *Roberts v. Cockrell*, 319 F.3d 690, 691 n. 2 (5th Cir.2003). The record reflects that he delivered his petition to LSP officials for mailing on October 22, 2014. Rec. Doc. 1-3 at 112.

II.  *Timeliness*

A.  *Statute of Limitations*

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a petitioner has one year within which to bring his *habeas corpus* claims pursuant to 28 U.S.C. § 2254, with this one year period commencing to run from "the latest of" either the date the petitioner's state judgment became final or the expiration of the time for seeking review. *See* 28 U.S.C. §2244(d)(1)(A) (West 2013), as amended by the AEDPA, P.L. 104–132, 110 Stat. 1220.[15]  As to finality, the United States Fifth Circuit Court of Appeals has explained:

> The statute of limitations for bringing a federal habeas petition challenging a state conviction begins to run on "the date on which the [state] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). When a habeas petitioner has pursued relief on direct appeal through his state's highest court, his conviction becomes final ninety days after the highest court's judgment is entered, upon the expiration of time for filing an application for writ of certiorari with the United States Supreme Court. *Roberts v. Cockrell*, 319 F.3d 690, 693 (5th Cir.2003). However, "[i]f the defendant stops the appeal process before that point," ... "the conviction becomes final when the time for seeking further direct review in the state court expires." *Id*. at 694; *see also Foreman v. Dretke*, 383 F.3d 336, 338 (5th Cir.2004) ( Section 2244(d)(1)(A) gives alternative routes for finalizing a conviction: either direct review is completed or the time to pursue direct review expires).

> Although federal, not state, law determines when a judgment is final for federal habeas purposes, a necessary part of the finality inquiry is determining whether

---

[15] Title 28 U.S.C. § 2244(d)(1) provides additional grounds, which do not apply in this case.  See generally, 28 U.S.C. §§ 2244(d)(1)(B)-(D).

> the petitioner is still able to seek further direct review. *See Foreman*, 383 F.3d at 338–39. As a result, this court looks to state law in determining how long a prisoner has to file a direct appeal. *See Causey v. Cain*, 450 F.3d 601, 606 (5th Cir.2006); *Roberts*, 319 F.3d at 693.

*Butler v. Cain*, 533 F.3d 314, 317 (5th Cir.2008).

In this case, Gonzales' conviction became final, for federal limitations purposes, on January 19, 2012, after the 90-day deadline had passed for filing a writ of certiorari with the U.S. Supreme Court. Under a plain reading of the statute, Gonzales then had one year within which to file his federal *habeas* petition, or a deadline of January 22, 2013.[16] He did not file his federal *habeas* petition with this Court until October 22, 2014. Thus, barring statutory or equitable tolling, his petition must be dismissed as untimely.

B. *Statutory tolling*

The AEDPA itself provides for interruption of the one-year limitations period. Section 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). By its plain language, this provision does not create a new, full, one-year term within which a federal *habeas* petition may be filed at the conclusion of state court post-conviction proceedings. *Flanagan*, 154 F.3d 196, 199 n. 1 (5th Cir. 1998). Because this

---

[16] In 2013, January 19th fell on a Saturday. January 20th was a Sunday. Monday, January 21st was Martin Luther King Day. La. C.Cr.P. art. 13; Fed.R.Civ.P. 6(a)(1)(C).

statute is a tolling provision, the time during which state court post-conviction proceedings are pending is merely subtracted from the one-year limitations period. *Id.*

Gonzales did not file his post-conviction application in the state district court until January 18, 2013. By this point, 364 days of the limitations period had elapsed. Although this application may have served to toll the one-year federal limitations period, Gonzales had only one day of untolled time remaining once state post-conviction proceedings concluded, in which to file his federal application with this Court. The federal limitations period began to run again when the Louisiana Supreme Court denied his writ application on Friday, October 10, 2014.[17] The one-year limitations period therefore expired on October 14, 2014.[18] Gonzales filed his *habeas* application in this Court on October 22, 2014, eight days after the federal

---

[17] In his traverse, Gonzales asserts incorrectly that he had an additional 14 days from the date the writ application was denied in which to seek a rehearing in the Louisiana Supreme Court. However, Louisiana Supreme Court Rule IX, § 6 plainly states that "[a]n application for rehearing *will not be considered* when the court has merely granted or denied an application for a writ of certiorari or a remedial or other supervisory writ ...." Louisiana Supreme Court Rule IX, § 6 (emphasis added). Furthermore, Gonzales did *not* apply for a rehearing in the Louisiana Supreme Court. Nor has he cited any authority to support his argument, and this Court has found none, that mandates inclusion of the period in the AEDPA calculation. The Court additionally notes that any tolling ended no later than the date of the Louisiana Supreme Court's decision because a petitioner clearly receives no tolling credit in post-conviction proceedings for the period during which he could have sought review by the United States Supreme Court. *Lawrence v. Florida*, 549 U.S. 327, 332, 127 S.Ct. 1079, 1083, 166 L.Ed.2d 924 (2007); *Ott v. Johnson*, 192 F.3d 510, 512 (5th Cir.1999).

[18] The limitations period expired on the next day that was not a Saturday, Sunday, or legal holiday. October 11th and 12th in 2014 fell on Saturday and Sunday. Monday, October 13th was Columbus Day. Therefore, Gonzales actually had until October 14, 2014 to file his *habeas* application in this Court. Fed.R.Civ.P. 6(a)(1)(C).

limitations period expired.  Thus, absent equitable tolling, his petition is untimely.

C.  *Equitable tolling*

The one-year limitations period may be equitably tolled if a petitioner can establish that he diligently pursued his rights and that an extraordinary circumstance hampered his ability to file his petition within the one-year federal limitations period.  *Holland v. Florida*, 560 U.S. 631, 649 (2010); *see also Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005).  "Reasonable diligence ... not maximum feasible diligence" is required to satisfy the first prong.  *Holland*, 560 U.S. at 653.  As to the second prong, the Court held that typically "a petitioner must bear the risk of attorney error," but this is subject to some limits where the attorney's "professional misconduct" could "amount to egregious behavior and create an extraordinary circumstance that warrants equitable tolling."  *Id*. at 650–51.  However, "a garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling."  *Id*. at 651–52 (internal quotation marks and citations omitted).

In this case, Gonzales acknowledges that the Louisiana Supreme Court denied his writ application on October 10, 2014.  However, he asserts that he did not learn of that decision until 10 days later on October 20, 2014, when he received a letter from his attorney (dated October 15, 2014), concluding the representation and enclosing a copy of the Louisiana Supreme Court ruling denying his writ application.  Two days later, on October 22, 2014, Gonzales filed his federal application in this Court.  Given these circumstances, Gonzales argues

10

he should be entitled to equitable tolling.

Notable for purposes of this inquiry are two letters in the record from Gonzales' counsel to his client – the one dated October 15, 2014 referenced above that informed Gonzales that his writ application in the state supreme court had been denied five days earlier, as well as an earlier letter, dated June 9, 2014, with a subject line reading "Federal Habeas Petition." (Rec. doc. 14 at p. 13). In this earlier letter, counsel advises Gonzales that, while he had "reached out" to the latter's mother regarding "going forward with the [federal] habeas petition," because he had not yet been paid to do so, he "can only advise [Gonzales] to file pro se." *Id.* That advice is followed by this – incorrect – advice: "note that you will have more than 3 days to file in the Eastern District, as you previously anticipated, because [] there are delays associated with the time to seek a rehearing with the Louisiana Supreme Court and/or certiorari to the Untied States Supreme Court." *Id.*

In his traverse, Gonzales focuses on the diligence factor set forth in *Holland*, arguing that he promptly filed his federal application two days after he learned the Louisiana Supreme Court had denied his writ application. Based on the entirety of the record, the Court agrees. Keeping in mind the Supreme Court's admonition that "[r]easonable diligence ... not maximum feasible diligence" is what is required to establish diligence, *Holland*, 560 U.S. at 653, Gonzales has certainly done so. Not only did he file his federal petition two days after receiving notice of the denial of the state petition, he did so after being advised by his prior counsel (who had concluded his representation in the October 15, 2014 letter) that he had <u>even more</u> time to act.

11

The Court finds that Gonzales acted with reasonable diligence in this regard.

More troublesome is the question whether "extraordinary circumstances" hampered Gonzales' ability to timely file his federal petition. *Lawrence v. Florida*, *supra*. While Gonzales fails to address this element in his traverse, the Court nonetheless believes the totality of the circumstances reflected in this record justify a finding that such circumstances do exist here and that equitable tolling is justified in this case.

While it is a somewhat close call, this is not a "garden variety" example of excusable neglect, such as a "simple miscalculation that leads a lawyer to miss a filing deadline." *Holland* at 651–52  There is more here than the simple miscalculation of a deadline.  There is such a miscalculation, to be sure, as reflected in counsel's two letters to Gonzales on the topic of his federal *habeas* petition.  (Rec. doc. 14 at pp. 12-13).  But there is also the fact that counsel, for reasons unknown, waited until the day before the federal limitations period had run to file his state application.  Then, despite knowing Gonzales intended to seek federal *habeas* relief as reflected in the subject line of his June 9, 2014 letter, he <u>mailed</u> the notice of the denial of the state application <u>after</u> the federal limitations period had run and, in the same letter, withdrew from the case without advising Gonzales of his federal filing deadline.  This procession of errors did not just hamper Gonzales' ability to timely file his federal petition *pro se*, it made it impossible for him to do so.

The Court finds the totality of errors by counsel do in fact rise to the level of egregiousness sufficient to warrant application of equitable tolling, *Holland, supra,* and will

12

recommend that the petition be considered on the merits.  Accordingly, the Court now turns to that task.

### III.  *Substantive Merits Review*

#### A.  *Standards of Review*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal *habeas* court's role in reviewing state prisoner applications in order to prevent federal *habeas* 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law or mixed questions of law and fact, a federal court must

defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." *Bell*, 535 U.S. at 694.

A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the United States Supreme Court's cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of the United States Supreme Court and nevertheless arrives at a result different from United States Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000); *Wooten v. Thaler*, 598 F.3d 215, 218 (5th Cir.), *cert. denied*, 131 S.Ct. 294 (2010). An "unreasonable application" of [United States Supreme Court] precedent occurs when a state court "identifies the correct governing legal rule... but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407-08; *White v. Woodall*, 134 S.Ct. 1697, 1706 (2014).

It is well-established that "an unreasonable application is different from an incorrect one." *Bell*, 535 U.S. at 694. A state court's merely incorrect application of Supreme Court precedent simply does not warrant *habeas* relief. *Puckett v. Epps*, 641 F.3d 657, 663 (5th Cir.2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not

14

simultaneously unreasonable."). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable" under the AEDPA." *Harrington v. Richter*, 562 U.S. 86 (2011). Section 2254(d) preserves authority to issue the writ in cases where there is "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [United States Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. at 102; emphasis added); *see also Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1866 (2010) ("AEDPA prevents defendants—and federal courts—from using federal *habeas corpus* review as a vehicle to second-guess the reasonable decisions of state courts.").

B. *Petitioner's Claims*

(1) *Sufficiency of the evidence*

Gonzales claims that the evidence was insufficient to support his conviction for armed robbery. He argues that the State failed to prove his identity as the perpetrator based on the victim's unreliable identification of him and Diokhane's testimony that Gonzales was not involved in the robbery. Gonzales raised the claim on direct review. The state court properly identified and applied the controlling United States Supreme Court precedent, *Jackson v. Virginia*, *supra*. Analyzing the evidence under *Jackson*, the state court determined that the evidence was constitutionally sufficient, reasoning as follows:

> The standard of review for sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude the State proved the essential elements of the crime and the defendant's identity as the perpetrator of that crime beyond a reasonable doubt. In conducting this review, we also must be

15

expressly mindful of Louisiana's circumstantial evidence test, which states in part, "assuming every fact to be proved that the evidence tends to prove," in order to convict, every reasonable hypothesis of innocence is excluded. *State v. Wright*, 98–0601 (La. App. 1st Cir.2/19/99), 730 So.2d 485, 486, *writs denied*, 99–0802 (La.10/29/99), 748 So.2d 1157, 2000–0895 (La.11/17/00), 773 So.2d 732 (quoting LSA–R.S. 15:438).

When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. *State v. Wright*, 730 So.2d at 487.

Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. LSA–R.S. 14:64(A).

After a thorough review of the record, we are convinced that any rational trier of fact, viewing the evidence presented in this case in the light most favorable to the State, could find that the evidence proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of armed robbery and the defendant's identity as a perpetrator of that offense against the victim. The jury rejected the defendant's theory that he was "just an innocent person who [was] in the wrong place, in bad company, at the wrong time." When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. *State v. Moten*, 510 So.2d 55, 61 (La. App. 1st Cir.), *writ denied*, 514 So.2d 126 (La.1987). No such hypothesis exists in the instant case.

Additionally, the verdict rendered against the defendant indicates the jury accepted the testimony offered against him and rejected the testimony offered in his favor. On review, this court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. The testimony of the victim alone is sufficient to prove the elements of the offense. The trier of fact may accept or reject, in whole or in part, the testimony of any

witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. *State v. Lofton*, 96–1429 (La. App. 1st Cir.3/27/97), 691 So.2d 1365, 1368, *writ denied*, 97–1124 (La.10/17/97), 701 So.2d 1331.

Further, in reviewing the evidence, we cannot say that the jury's determination was irrational under the facts and circumstances presented to them. *See State v. Ordodi*, 2006–0207 (La.11/29/06), 946 So.2d 654, 662. An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. *State v. Calloway*, 2007–2306 (La.1/21/09), 1 So.3d 417, 418 (per curiam).

This assignment of error is without merit.[19]

The Louisiana Supreme Court then denied his related writ application without assigning additional reasons.

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Taylor v. Day*, Civ. Action No. 98–3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), *aff'd*, 213 F.3d 639 (5th Cir.2000).

Under *Jackson v. Virginia*, 443 U.S. 307 (1979), a federal *habeas* court addressing an

---

[19] *State v. Gonzales*, No. 2010-1634, 2011 WL 1103653, at *3-4 (La. App. 1st Cir. March 25, 2011; State Rec., Vol. 5 of 7.

insufficiency of the evidence claim must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Williams v. Cain*, 408 F. App'x 817, 821 (5th Cir.2011); *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir.2008). Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law. *Perez*, 529 F.3d at 594 (*citing Jackson*, 443 U.S. at 324 n. 16). The court's consideration of the sufficiency of the evidence extends only to what was presented at trial. *See McDaniel v. Brown*, 558 U.S. 120, 131, 130 S.Ct. 665, 672 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 F. App'x 89, 91 (5th Cir.2009) (*Jackson* standard relies "upon the record evidence adduced at the trial") (*quoting Jackson*, 443 U.S. at 324).

Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. *United States v. Young*, 107 F. App'x. 442, 443 (5th Cir.2004) (*citing United States v. Garcia*, 995 F.2d 556, 561 (5th Cir.1993)); *see Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). Thus, all credibility choices and conflicting inferences must be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir.2005).

A federal *habeas* court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder. *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir.1995); *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir.1985).   In addition, "[t]he *Jackson* inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.' "*Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir.2001) (*quoting Herrera v. Collins*, 506 U .S. 390, 402 (1993) (emphasis added)).   Moreover, because the state court's decision applying the already deferential *Jackson* standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential." *Parker v. Matthews*, 132 S.Ct. 2148, 2152 (2012); *see also Coleman v. Johnson*, 132 S.Ct. 2060, 2062 (2012).

In the instant case, the victim, Priscilla Magee, positively identified Gonzales as the perpetrator of the crime.   She maintained from the day of the robbery to the time of trial that he was the person who robbed her.   Thus, if the victim's testimony in this case is credited, she consistently and positively identified Gonzales as the perpetrator of the crime.   A single eyewitness identification is constitutionally sufficient to prove identity and support a conviction.   *See United States v. King*, 703 F.2d 119, 125 (5th Cir. 1983); *State v. Neal*, 796 So.2d 649 (La. 2001).

The evidence contradicts Gonzales' assertion that Magee's identification of him was unreliable.   She viewed both suspects on the night of the robbery and positively identified

Gonzales as the perpetrator. She testified consistently at trial and did not waver on her prior identification of Gonzales. The jury heard the victim testify that despite being "very traumatized" and getting only a partial, but direct, view of the perpetrator's covered face, she was still certain that Gonzales was the perpetrator.[20] She then identified Gonzales again at trial as the perpetrator. Magee's testimony alone is sufficient to support the conviction.

However, despite her unwavering identification of him as the perpetrator, Gonzales argues that the victim's identification should have been rejected based on Diokhane's testimony. Diokhane admitted responsibility for the crime and pleaded guilty. He testified at trial that it was him, not Gonzales, who pointed the gun at the victim and robbed her. But the mere fact that Diokhane pleaded guilty and accepted responsibility for his role in the crime does not necessarily prove Gonzales' innocence. According to the law of principals, an individual may be found guilty of armed robbery regardless of whether he actually held a weapon himself. *See, e.g., State v. Franklin*, 13-723 (La. App. 5th Cir. 5/28/15), 142 So.3d 295, 301 ("The state may prove a defendant guilty by showing that he served as a principal to the crime by aiding another. Under this theory, the defendant need not actually take anything to be found guilty of the crime of armed robbery. Additionally, a defendant convicted as a principal to armed robbery need not have personally held a weapon to be guilty." (citation omitted)), *writ denied*, 2015 WL 918684 (La. Feb. 13, 2015); *State v. Huey*, 2013-1227 (La.

---

[20] State Rec., Vol. 3 of 7, Trial Transcript (Aug. 26, 2009), pp. 621-624.

App.1st Cir. Feb. 18, 2014), 142 So.3d 27, 30 (same), *writ denied*, 149 So.3d 795 (La. 2014), *cert. denied*, 2015 WL 852511 (U.S. 2015).   Regardless, the mere presence of conflicting testimony did not require the jury to discredit the victim's testimony and accept Diokhane's version of events.   The jury was free to weigh the conflicting testimony, find the victim's identification of Gonzales credible, and ultimately reject Gonzales' theory that he was not involved in the crime and was merely an innocent and unwitting bystander.   A federal *habeas* court may not substitute its interpretation of the evidence or its view of the credibility of witnesses for that of the jury. Where a petitioner's insufficient-evidence claim turns on a credibility determination, a federal *habeas* court generally will not grant relief.   *See Schlup v. Delo*, 513 U.S. 298, 330 (1995).

The evidence in this case, viewed in the light most favorable to the prosecution, was sufficient for any rational trier of fact to find that the State satisfied the elements necessary to prove armed robbery.   Therefore, Gonzales cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.   He is not entitled to relief on this claim.

(2)  *Excessive sentence and denial of motion to reconsider sentence*

In these two related claims, Gonzales argues that his sentence was excessive and that the trial court erred in denying his motion to reconsider.   He claims the 40-year sentence is unconstitutionally excessive for a 15-year old first-time offender.

21

To the extent Gonzales claims that his sentence is excessive or otherwise inappropriate under Louisiana law, the claim is not cognizable on federal *habeas* review. Federal *habeas corpus* relief is available only to correct violations of federal constitutional law. This Court does not sit to review alleged errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 479-80, 116 L.Ed.2d 385 (1991); *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir.1998). Accordingly, this Court will not review the state court's findings regarding the legality of Gonzales' sentence under state law. *Brunet v. Goodwin*, Civ. Action No. 12–1974, 2013 WL 623505, at *12 (E.D.La. Jan.22, 2013) ("[E]ven if Brunet's sentences were excessive under the Louisiana Constitution or if the trial court failed to comply with state law concerning sentencing procedures, which are issues this court need not and does not reach, those errors would not be correctable in a federal *habeas corpus* proceeding."), *adopted*, 2013 WL 619278 (E.D. La. Feb.19, 2013).

Although he cites to no federal authority, to the extent he may claim that his sentence is excessive under the Eighth Amendment of the United States Constitution, the claim lacks merit. Federal *habeas* relief is not available unless the state court decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

A sentence within statutory limits will not be upset by a federal *habeas* court, unless it is grossly disproportionate to the gravity of the offense. *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991); *Solem v. Helm*, 463 U.S. 277, 291–92 (1983). "[W]hen a threshold comparison

22

of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality,'" this Court will then consider:   (1) the sentences imposed on other criminals in the same jurisdiction and (2) the sentences imposed for commission of the same offense in other jurisdictions. *Smallwood v. Johnson*, 73 F.3d 1343, 1347 (5th Cir.1996) (*quoting Harmelin*, 501 U.S. at 1005) (*citing McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir.1992)); *United States v. Gray*, 455 F. App'x 448, 449 (5th Cir.2011); *United States v. Thomas*, 627 F.3d 146, 160 (5th Cir.2010), *cert. denied*, 131 S.Ct. 2470 (2011).   If the sentence is not "grossly disproportionate" in the first instance, however, the inquiry is finished. *United States v. Gonzales*, 121 F.3d 928, 942 (5th Cir.1997), *overruled in part on other grounds*, *United States v. O'Brien*, 560 U.S. 218, 234–35 (2010) (as recognized in *United States v. Johnson*, 398 F. App'x 964, 968 (5th Cir.2010)).   As the Supreme Court has noted, "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel v. Estelle*, 445 U.S. 263, 272, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980).

Gonzales received a 40-year sentence for armed robbery, an offense that carries a potential maximum sentence of 99 years imprisonment.   The sentence fell well within the limits set by the Louisiana legislature.   *See United States v. Miknevich*, 638 F.3d 178, 186 (3d Cir.2011) ("Generally, a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment. This is so because we accord substantial deference to [the legislature], as it possesses broad authority to determine the types and limits of punishments for crimes." (citations omitted)). The Louisiana First Circuit Court of Appeal

23

set forth factors that sufficiently explained why his sentence of 40 years was proportionate

and warranted for this crime:

> In his combined assignments of error numbers 2 and 3, the defendant argues the trial court erred in denying the motion to reconsider sentence and that the sentence was unconstitutionally excessive. Specifically, he claims the sentence was excessive because he was only fifteen years old at the time of the offense, and this was his first felony conviction.

> Article I, Section 20, of the Louisiana Constitution prohibits the imposition of excessive punishment. Although a sentence may be within statutory limits, it may violate a defendant's constitutional right against excessive punishment and is subject to appellate review. Generally, a sentence is considered excessive if it is grossly disproportionate to the severity of the crime or is nothing more than the needless imposition of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm to society, it is so disproportionate as to shock one's sense of justice. A trial judge is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of manifest abuse of discretion. *State v. Hurst*, 99–2868 (La.App. 1st Cir.10/3/00), 797 So.2d 75, 83, *writ denied*, 2000–3053 (La.10/5/01), 798 So.2d 962. The sources of information relied upon by the sentencing court are varied and may include evidence usually excluded from the courtroom at the trial of guilt or innocence, e.g., hearsay and arrest as well as conviction records. *State v. Allen*, 2005–1622 (La. App. 1st Cir.3/29/06), 934 So.2d 146, 157.

> Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than ten years and not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence. LSA–R.S. 14:64(B). The defendant was sentenced to forty years at hard labor, without benefit of probation, parole, or suspension of sentence.

> At sentencing, the State moved for the maximum sentence, citing the fact that, following the instant offense, the defendant had been charged with at least one murder during a robbery and had fired on five police officers while being apprehended at Xavier University. The defense argued the charges referenced by the State had been reduced to second degree murder. The defendant moved

for the minimum sentence. He argued he had rejected a plea deal because he "[felt] as though that I'm innocent and I don't want to just throw my life away because I still have a future." He claimed that while out on bond, he graduated, worked at McDonalds, attended church, and enrolled in college. He claimed there were people who could "vouch" for him, but that his family had been too busy to contact them to testify for him.

Deshonda Griffin, the defendant's mother, asked the court to have mercy on the defendant. She indicated the defendant had worked hard to earn his high school diploma and had enrolled in college. She indicated the defendant had trusted everyone as a friend and had been loyal to everyone he called a friend.

The trial court noted the defendant had committed the instant armed robbery as a juvenile, but had been charged and convicted as an adult. The court acknowledged the pleas for mercy for the defendant, but stated it had reviewed the presentence investigation report (PSI). The court noted that while the defendant had not been convicted of anything other than the instant armed robbery, "it [was] obvious that [he] ... has continued to have run-ins with the law until he was picked up." The court stated:

> So what I'm faced with is a very young man convicted of a very violent crime and who appears to have at least continued to be associated or around violence. So as I sentence him, not only do I have to be [considerate of] imposing the sentence that is appropriate for the particular crime that has been committed in this case, but the community has to be considered; and I take the safety of our community into consideration at the same time.
>
> Having considered all of the different factors, I feel that, that [the defendant] requires a lengthy incarceration. I am concerned that if released any time soon that [the defendant] would be engaged in violent activities and would present a threat to our community.

Additionally, the court noted any lesser sentence would deprecate the seriousness of the offense.

A thorough review of the record reveals the trial court did not manifestly abuse its discretion in imposing sentence. The sentence imposed was not grossly disproportionate to the severity of the offense, and thus, was not

25

unconstitutionally excessive.

These assignments of error are without merit.[21]

The Louisiana Supreme Court also denied relief without additional stated reasons.[22]

Given the circumstances of his crime and his 40-year sentence, this case simply does not qualify as a rare situation in which the difference between the crime and the sentence was unconstitutionally disproportionate. *Compare Solem v. Helm*, 463 U.S. 277, 281, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983) (holding that the Eighth Amendment prohibited a life sentence without the possibility of parole for a recidivist offender convicted of "uttering a 'no account' check for $100"), *with Harmelin v. Michigan*, 501 U.S. 957, 961, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (rejecting a proportionality challenge to a mandatory sentence of life without the possibility of parole imposed on a first-time offender convicted of possessing 672 grams of cocaine), and *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980) (rejecting a proportionality challenge where the defendant had been sentenced to life imprisonment under a recidivist statute following his conviction for obtaining $120.75 by false pretenses).

Gonzales fails to demonstrate that the adjudication of his sentencing claims was contrary to or involved an unreasonable application of clearly established federal law. He is not entitled to relief on these grounds.

---

[21] *State v. Gonzales*, 2011 WL 1103653, at * 4.

[22] *State v. Gonzales*, 58 So.3d 379 (La. 2011).

(3) *Trial court exceeded its jurisdiction*

Gonzales argues that his constitutional rights under the Fifth and Eighth Amendments were violated when the district court assumed jurisdiction of the armed robbery charge without a continued custody hearing held by the juvenile court as required under Louisiana law.

To the extent the jurisdiction argument is presented as an alleged violation of Louisiana law, the claim is not cognizable for federal *habeas corpus* review. *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).  Thus, Gonzales is not entitled to *habeas corpus* relief regarding any alleged jurisdiction issues which may have violated Louisiana law.

Even as an alleged violation of applicable federal law, his jurisdiction claim still does not establish a federal constitutional violation. Gonzales argues the Supreme Court has recognized that transferring jurisdiction from juvenile to adult court is a critical phase which triggers constitutional due process and fundamental fairness principles, citing *Kent v. United States*, 383 U.S. 541, 554, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).

The state district court denied the claim on post-conviction review based on its findings of fact that showed jurisdiction was properly transferred:

> Gonzales is correct in stating that juvenile courts have exclusive original jurisdiction  over delinquency proceedings under La. Const. Art. V. Section 19 and Ch. C. Art. 303.  However, for juveniles 15 years and older accused of certain serious crimes, the legislature has elected that jurisdiction may be transferred to the criminal court.  Ch. C. Art. 305 B includes armed robbery in the list of "prosecutorial waiver" crimes, giving the District Attorney sole discretion to elect either juvenile or criminal court, provided, however, that first:

27

> The juvenile court holds a continued custody hearing and finds probable cause that the child has committed any of the offenses listed in Subparagraph (2) of this Paragraph and a bill of information charging any of the offenses listed in Subparagraph (2) of this Paragraph is filed.

> In the instant case, a continued custody hearing was held on August 25, 2005 in the Slidell City Court Juvenile Section, docket number 2005JC03226, at which Judge Lamz found probable cause to hold Gonzales.[23]  Thereafter, the District Attorney filed a bill of information within 30 days of Gonzales' arrest thereby properly transferring jurisdiction to adult criminal court.[24]

The factual findings made by the state courts are presumed correct, and the presumption of correctness may be rebutted by a petitioner only with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Thus, the state court's factual finding regarding the continued custody hearing and probable cause determination related to the transfer of jurisdiction is entitled to deference.  *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir.2000). Gonzales presents argument in opposition, but points to no "clear and convincing evidence" that would rebut the presumption.  He admits that he appeared before Judge Lamz in juvenile court, but labors under a misunderstanding as to the precise nature and import of the proceedings that took place on August 25, 2005.  The state court's reasons clearly designate the nature of the

---

[23] This hearing was held more than 3 days after Petitioner's arrest.  However, in *State v. Hamilton*, 676 So.2d 1081, 96-0107 (La. 7/2/96), the Supreme Court held that a failure to follow the strict time limits for institution of prosecution in juvenile matters was not jurisdictional.  The remedy for failure to timely file charges is release from bail and not dismissal, similar to C.Cr.P. Art. 701 (footnote in original).

[24] State Rec., Vol. 5 of 7, State District Court's Order and Reasons for Judgment.

proceeding that took place.  He also argues that his continued housing at the detention facility months after the District Attorney filed the bill of information demonstrates that jurisdiction was lacking in the criminal district court.  However, the mere fact that he remained in a juvenile facility — which is discretionary under Louisiana law and was ordered to protect Gonzales' safety and well-being as the record reflects — does not establish that jurisdiction in criminal district court was lacking.[25]

Accordingly, Gonzales has failed to demonstrate that the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  He is not entitled to *habeas* relief on this claim.

(4)  *Ineffective assistance of trial counsel*

Finally, Gonzales contends his counsel rendered ineffective assistance both pretrial and during trial in failing to: (a) file a motion to quash or object to his improper transfer of jurisdiction to criminal district court; (b) conduct adequate voir dire examination of prospective jurors; (c) conduct adequate cross-examination regarding the victim's in-court identification; and (d) object to the suggestive in-court identification.  Gonzales raised these claims in an application for post-conviction relief.  By reasoned judgment, the state district

---

[25] State Rec., Vol. 1 of 7, Minute entry dated January 19, 2006 (ordering Gonzales transported back to juvenile facility due to overcrowding) and Vol. 5 of 7, state court's judgment explaining the impact of Hurricane Katrina in late August 2005.

court denied relief under *Strickland v. Washington*, 466 U.S. 668, 697 (1984). The ruling was subsequently upheld by the Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court.

As correctly noted by the state district court, the United States Supreme Court has established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 697 (1984). A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir.1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir.2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. *Strickland*, 466 U.S. at 697.

To prevail on the deficiency prong of the *Strickland* test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir.2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir.1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *See Strickland*, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular

30

case, viewed as of the time of counsel's conduct.' " *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690). A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir.1986); *Matthesson v. King*, 751 F.2d 1432, 1441 (5th Cir.1985).

In order to prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793.

Regarding Gonzales' first alleged incidence of ineffective assistance for failure to object to transferring jurisdiction from juvenile court, he fails to demonstrate deficient performance or prejudice. As previously explained, Gonzales presented no credible argument to show that jurisdiction was improper. His substantive claim that jurisdiction was vested exclusively in the juvenile court based on the State's alleged failure to follow Louisiana law governing transfer was entirely without merit. Therefore, the Court finds that no basis for an objection to jurisdiction or improper transfer existed and no prejudice resulted by defense counsel's failure to object to the alleged improper transfer of jurisdiction. Counsel is not ineffective for

31

failing to lodge meritless objections. *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir.1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."); *see also United States v. Kimler*, 167 F.3d 889, 893 (5th Cir.1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").  He is not entitled to *habeas* relief on this claim.

Next, Gonzales contends counsel rendered ineffective assistance during voir dire proceedings due to her "extreme brevity" and inadequate questioning of prospective jurors. As support for this proposition, he points to the fact that defense counsel's examination spanned only eight pages of an almost three-hundred page voir dire transcript.[26] In particular, he focuses on her limited questioning regarding eyewitness identification, an issue central to his case.

The state district court concluded that counsel did not perform deficiently merely because her questioning was shorter than the other attorneys.  The court cited the fact that co-defendant's counsel was also conducting voir dire and that a significant amount of questioning over three panels of prospective jurors occurred before the jury was seated.   In fact, the record shows that defense counsel for Gonzales was actively engaged throughout voir dire examination and fully participated in the proceedings.  She concluded the questioning of the

---

[26] Rec. Doc. 1, Memo in support, p. 20.

first venire panel — following the trial court, state prosecutor and defense counsel for co-defendant (questioning that spanned approximately 89 transcript pages) — by exploring their beliefs about the accuracy of eyewitness identification, the burden of proof, and a defendant's decision not to take the stand and testify.[27]  She raised objections to the State's numerous challenges and successfully challenged one juror.  Nine jurors were seated following this panel.  Similarly, the second venire panel was questioned extensively (approximately 60 pages of transcript examination) by the time Gonzales' counsel conducted her voir dire.  Yet defense counsel still asked pertinent questions relevant to her client that again covered burden of proof, accuracy of eyewitness identification and a defendant's right not to testify.[28] Once again, she raised appropriate objections.  She exercised numerous peremptory challenges.  Two more jurors were seated from this panel.  For the final venire panel, Gonzales' counsel again questioned prospective jurors last after they had been examined at length (80 transcript pages).[29] Her questioning was measured, effective and encompassed eyewitness identification.  The final juror was seated.

Voir dire "plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored." *Rosales–Lopez v. United States*, 451 U.S.

---

[27] State Rec., Vol. 2 of 7 (Voir dire), pp. 337-344.

[28] *Id*. at 421-34.

[29] *Id*. at 516-28.

182, 188, 101 S.Ct. 1629, 68 L.Ed.2d 22 (1981).  While effective assistance of counsel is required during voir dire proceedings, "[n]o hard-and-fast formula dictates the necessary depth or breadth of voir dire." *See Skilling v. United States*, 561 U.S. 358, 362, 130 S.Ct. 2896, 177 L.Ed.2d 619 (2010); *see also Battaglia v. Stephens*, 2015 WL 4257256, at *3-4 (5th Cir. July 15, 2015), citing *Garza v. Stephens*, 738 F.3d 669, 676 (5th Cir.2013) ("Moreover, Garza cites no authority, and we have found none, that would require a defense attorney to ask specific questions at voir dire.").  To satisfy *Strickland's* prejudice prong a petitioner must show that the juror selection process produced a juror that was actually biased against him.  *Villanueva v. Stephens*, 555 F. App'x 300, 306 (5th Cir. 2014), citing *Neville v. Dretke*, 423 F.3d 474, 483 (5th Cir. 2005). A defendant's disagreement with counsel's tactics or strategy during voir dire does not support a claim of ineffective assistance of counsel. *See Seigfried v. Greer*, 372 F. App'x 536, 540-41 (5th Cir. 2010).

Gonzales' general assertion that counsel conducted inadequate voir dire, supported by nothing more than a page count of her examination, does not demonstrate that she performed deficiently.  There is nothing in the record to suggest that Gonzales' defense counsel's actions during voir dire were objectively unreasonable.  To the contrary, she remained attentive and focused, posing relevant objections and challenges throughout voir dire proceedings, and making relevant inquiries of each venire panel.  The record contradicts Gonzales' assertion that she failed to develop the concept of eyewitness identification.  And although he may disagree with the scope or breadth of his counsel's questioning, his subjective opinion in this

34

regard will not suffice to demonstrate constitutionally deficient performance.

Moreover, Gonzales has not demonstrated that his trial counsel's "limited" voir dire resulted in prejudice.  To demonstrate prejudice, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.  He has not specified how additional questioning would have changed the result or produced a different jury.  Nor has he argued, much less demonstrated, that any bias or impartiality existed among the seated jury.  He is not entitled to relief on his claim of inadequate voir dire.

Gonzales next asserts that trial counsel failed to adequately cross-examine and impeach the victim's inconsistent statements and identification of him as the perpetrator.  He claims that had counsel vigorously examined the victim and highlighted the discrepancy between her statements to police describing the perpetrator's clothing as "black pants, black shirt (with a white t-shirt showing) and a rag (described later as possibly a shirt) around his head," and her testimony at trial that he wore "black - - white Dickies shirt, a white Dickies shirt, a white tie, and he had on black pants," a conviction could not have been obtained.   The state district court, noting the overwhelming totality of the evidence presented at trial, rejected Gonzales' assertion in his post-conviction application that had counsel questioned Magee about the inconsistencies in her white shirt/black shirt description and her failure to mention a tie until trial, he would not have been found guilty.

The extent or scope of cross-examination falls within the realm of trial strategy.  *Ford*

35

*v. Cockrell*, 315 F.Supp.2d 831, 859 (W.D.Tex.2004), *aff'd*, 135 Fed. App'x 769 (5th Cir.2005); *see also Lewis v. Cain*, Civ. Action No. 09–2848, 2009 WL 3367055, at *8 (E.D. La. Oct. 16, 2009), *aff'd*, 444 Fed. App'x 835 (5th Cir.2011).  In her cross-examination of the victim, defense counsel sought to challenge the victim's credibility surrounding her identification of the perpetrator by questioning her ability to identify exactly what the perpetrator was wearing considering it was a short, extremely traumatic encounter during which she had a gun pointed in her face, rather than focusing on specific, yet minor discrepancies in her testimony at trial regarding the clothing.[30]  When considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.  Here, Gonzales has not overcome the presumption that, under the circumstances, the challenged action by defense counsel constitutes sound trial strategy. *Id.*

Furthermore, Gonzales has failed to establish that he was prejudiced by counsel's actions.  The jury was able to consider and resolve any inconsistencies in Magee's testimony in light of the other evidence presented, including the testimony of Detective West, who described what clothing Gonzales was wearing when apprehended and that of Romalis West, who described the individual he saw running away from the scene.  Gonzales has not shown that if counsel had chosen a different tactic in challenging the victim's identification of the

---

[30] State Rec., Vol. 3 of 7, Trial Transcript, p. 621.

perpetrator that there is a reasonable probability the result of the proceedings would have been different.

Relatedly, in his traverse, Gonzales maintains that counsel was ineffective in failing to cross-examine Romalis West and Trina Mohammed, both employed at McDonald's with co-defendant, Red, at the time of the crime, specifically regarding their testimony that managers sometimes transported the store's money for bank deposit in a McDonald's bag.[31]  He claims that their testimony conflicted with Magee's testimony and this inconsistency should have been a focus of cross-examination to strengthen the defense's case.  Gonzales fails to show that his counsel's decision not to conduct cross-examination of these witnesses was ineffective assistance or that it prejudiced his defense.  Contrary to his assertion, the testimony of all three witnesses – the victim,  West, and Mohammed, was not inconsistent.  The victim's testimony was clarified by the state on re-direct examination and she explained that although *some* store managers carried money for deposits in McDonald's bags, *she* personally did not do so.[32]  Defense counsel's decision not to cross-examine these witnesses falls soundly within the realm of reasonable trial strategy.  Gonzales is not entitled to relief on this claim.

Finally, Gonzales asserts that counsel should have moved for a mistrial or at least objected based on the "wildly suggestive" in-court identification made by the victim.  The claim

---

[31] Rec. Doc. 14, Traverse, p. 9.

[32] State Rec., Vol. 3 of 7, pp. 623-24.

was likewise raised in a post-conviction application and rejected by the state district court.

First, the record clearly shows that defense counsel objected when the prosecutor requested that Diokhane be allowed to return to the courtroom so that the victim could identify which of the two individuals she recognized as the perpetrator.[33]   The trial court overruled the objection.  The transcript reflects the following exchange took place during the identification process:

MR. NORIEA:

>   Okay.

>   Your Honor, I ask that the defendant, Alonzo Gonzales, stand next to – to Mr. Diokhane.  And may the witness approach both of them and look at both of them so she could give to the jury.

THE COURT:

>   You can stand up, Mr. Alonzo.

MR. NORIEA:

>   Ms. Priscilla, you want to go look at them?

THE WITNESS:

>   I can see them from here.

MR. NORIEA:

>   Which one did you identify that night?

---

[33] State Rec., Vol. 3 of 7, Trial Transcript, p. 611-12.

THE WITNESS:

      The young man.

MR. NORIEA

      On the left?  Gonzales?  In the tie?

THE WITNESS:

      Yes, sir.

MR. NORIEA:

      Are you sure about that?

THE WITNESS:

      Yeah.  I'm focused on bright.  I wasn't focused on dark skin.

MR. NORIEA:

      Okay.[34]

A decision not to move for a mistrial is one of trial strategy. *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir.2008) ("It is oft-recognized that the decision not to seek a mistrial is frequently a strategic one.").  The United States Fifth Circuit Court of Appeal has noted that counsel's "conscious and informed" strategic decision not to seek a mistrial "cannot be the basis for constitutionally ineffective assistance unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Ward v. Dretke*, 420 F.3d 479, 491 (5th Cir.2005) (quoting *Martinez*

---

[34] *Id*. at 615.

*v. Dretke*, 404 F.3d 878, 885 (5th Cir.2005) (internal quotations omitted)). In making that decision, counsel is "required to balance the harm caused by the [improper conduct] against the legitimate possibility that a new trial would present less propitious prospects for his client." *Id*.

As with all decisions concerning matters of strategy and defense tactics, this Court must apply the "strong presumption" that such decisions fall "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 690. Federal courts have consistently recognized that tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir.1999), *cert. denied*, 528 U.S. 1013, 120 S.Ct. 522, 145 L.Ed.2d 401 (1999) (citing *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir.1997) and *Mann v. Scott*, 41 F.3d 968, 983–84 (5th Cir.1994)). Federal *habeas* courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. *Strickland*, 466 U.S. at 689. The burden is on petitioner to demonstrate that counsel's strategy was unreasonable. *Id*. Petitioner has made no such showing in the instant case.

Even assuming that the identification procedure was suggestive, there is no basis for finding that petitioner was prejudiced by counsel's failure to move for a mistrial. This was not a first-time identification by the victim. She had previously identified Gonzales at the scene of the crime. Therefore, it cannot be said that the prosecutor's actions influenced the victim's identification rather than the fact that the victim recognized Gonzales. She further

independently clarified her reasons for choosing Gonzales, as the state district court recognized in denying post-conviction relief on this claim.  The two men had different skin tones and the victim was the lighter of the two.  Under the circumstances, a mistrial would not have been warranted, and thus, no reasonable probability existed that the result of the proceeding would have been different if counsel had moved for a mistrial. *Strickland*, 466 U.S. at 694; *Geiger*, 540 F.3d at 309.

For the foregoing reasons, Gonzales has failed to demonstrate that the state court's decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Thus, under the AEDPA's doubly deferential standard applicable to ineffective assistance claims, the claims should be rejected.

## **RECOMMENDATION**

**IT IS RECOMMENDED** that Gonzales' application for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United*

41

*Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc).[35]

New Orleans, Louisiana, this 31st day of _____August_____, 2015.

_____
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**

---

[35] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.